**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARINE MECHANICAL CORP.,** | ) | **CASE NO.1:06CV2113** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **INTERNATIONAL UNION, UNITED** | ) | **OPINION AND ORDER** |
| **AUTOMOBILE, AEROSPACE AND** | ) | |
| **AGRICULTURAL IMPLEMENT** | ) | |
| **WORKERS OF AMERICA, ET AL.,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff Marine Mechanical Corp's ("MMC") Motion to Vacate (ECF # 16), and Defendants ("the Union") Motion for Summary Judgment (ECF #14). For the following reasons, the Court grants Defendants' Motion and denies Plaintiff's Motion.

**FACTS**

Plaintiff MMC is a supplier of control rod mechanisms for nuclear powered submarines and aircraft carriers for the United States Navy. These mechanisms raise and lowers control rods into reactor cores to control the amount of power generated by nuclear reactors. The

1

mechanisms contain four types of bearings which permit the parts in the mechanism to move up and down in the reactor core. Previously, MMC had relied on outside vendors to produce the bearings used in its control rod mechanisms. Sometime in the late 1990's MMC began producing these bearings in-house due to delivery, quality control and price issues with vendors.

Pursuant to a collective bargaining agreement ("CBA"), the Union is the bargaining representative "of all production and maintenance employees, including drivers and inspectors," at the MMC facilities. CBA Art.1, Section 1.2. The parties have entered into a series of CBAs with the current CBA in effect from 2004-2009. On May 20, 2005, the Union filed Grievance #05-10 concerning the in-house production of the control rod mechanism bearings, alleging the production of these bearings should be bargaining work under the terms of the CBA. Pursuant to an arbitration clause contained in the CBA, the issue was submitted to a mutually agreed upon arbitrator. However, MMC argued the issue was not arbitrable as the Union's grievance was untimely and MMC initially refused to arbitrate because of the alleged untimeliness of the grievance. Finally, after discussions between the arbitrator and MMC, MMC agreed, without waiving its objections or defenses, to participate in a hearing for the limited purpose of determining arbitrability of the grievance.

After a hearing, the arbitrator determined he had jurisdiction to hear the grievance because the grievance was not untimely.

Plaintiff MMC seeks to have the decision of the arbitrator vacated on the following grounds:

1) The arbitrator lacked jurisdiction to hear the issue of timeliness.

2) The arbitrator exceeded the scope of his authority

      3)       The arbitrator acted with partiality.

## **STANDARD OR REVIEW**

In discussing the standard of review in arbitration award cases, the Sixth Circuit has held, "our review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence." (quotations omitted). *Tenn. Valley Auth. v. Tenn. Valley Trades and Labor Council,* 184 F.3d 510, 514-15 (6th Cir.1999). The Sixth Circuit has further held, "we will consider only the questions of 'procedural aberration' outlined by the Supreme Court in *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29 (1987), and *Major League Baseball Players Association v. Garvey,* 532 U.S. 504 (2001)." *Truck Drivers Local No. 164 v. Allied Waste Systems, Inc.,* 512 F.3d 211, 216 (6th Cir. 2008).

The standard of review on a motion to vacate an arbitration award was set forth by the Sixth Circuit in *Michigan Family Resources, Inc., v. Service Employees International Union Local 517M*, 476 F.3d 746, 753 (6th Cir. 2007). There, it held a reviewing court must consider the following three questions: (1) "[d]id the arbitrator act 'outside his authority' by resolving a dispute not committed to arbitration? (2) Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, (3) was the arbitrator 'arguably construing or applying the contract'?" the Sixth Circuit went on to say, "[s]o long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute." *Id.* In *Michigan Family*, this Circuit held, "an arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds that authority only when the collective bargaining

agreement does not commit the dispute to arbitration." *Michigan Family,* 475 at 756.

### **Summary Judgment**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the

burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, this Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hospital Ass'n.,* 78 F.3d 1079, 1087 (6th Circ. 1996). "Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-250 (1986).

In *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 581 (6th Cir.1992) the Sixth Circuit held, "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict ..." quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). The Sixth Circuit went on to say, "the 'mere possibility' of a factual dispute is not enough. Rather, in order to defeat summary judgment a plaintiff must come forward with more persuasive evidence to support [his or her] claim than would otherwise be necessary. Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell* at 581.

## **LAW AND ANALYSIS**

The Court will address Plaintiff's objections in the order presented.

### **The arbitrator had no jurisdiction to render a decision on the timeliness of the grievance**

In *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960), the

5

Supreme Court held federal courts, not arbitrators, should determine whether a collective bargaining agreement requires a dispute to be resolved through arbitration. See also, *Michigan Family* at 750. The Supreme Court in *United Steelworkers* held, '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id*. at 582-83.

The Sixth Circuit in *United Steelworkers of America, AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics, Inc.,* 505 F.3d 417 (6th Cir. 2007) held there is a presumption that disputes over timeliness provisions are for an arbitrator to decide and when the collective bargaining agreement is silent as to whether courts or arbitrators should decide a question of timeliness the default position militates in favor of arbitration. Therefore, this Court must first determine whether the arbitration panel acted outside its authority by "resolving a dispute not committed to arbitration."

The Sixth Circuit has determined that the issue of whether a grievance is time-barred under a collective bargaining agreement is to be determined in arbitration itself. *Armco Employees Independent Federation v. AK Steel Corp.,* 252 F.3d 854, 859 (6th Cir. 2001) citing *John Wiley & Sons, Inc., v. Livingston,* 376 U.S. 543, 556-58 (1964). This issue of arbitrability of grievances alleged to be time-barred under the express language of the CBA was more recently dealt with *en banc* by the Sixth Circuit in the *Saint Gobain* case. There, the Sixth Circuit held:

> What emerges from *John Wiley & Sons* and *Howsam* is a fairly straightforward rule: A time limitation provision involves a matter of procedure; it is a "condition precedent" to arbitration, *id*. (internal quotation marks omitted); and it thus is "presumptively" a matter for an

6

>>arbitrator to decide, *id.* In the absence of an agreement to the contrary, in the absence in other words of language in the agreement rebutting the presumption, arbitrators rather than judges should resolve disputes over time-limitation provisions.

*Saint Gobain* at 422.

The pertinent grievance and arbitration clauses of the CBA state:

>**Article 9, Grievance Procedure, Step One**
>Any employee or the Union collectively having a grievance or any designated member of a group shall first take the grievance up orally with his Supervisor who will attempt to adjust it. Such grievance shall be initiated within five (5) days (excluding Saturday, Sunday and holidays) from the time he became aware of the incident. . . .
>
>**Section 9.4 Exemption From Liability**
>In all cases in which the Union or any employee of MMC is given the right under the terms of this contract to present a grievance, such grievance must be presented in the manner provided in this contract. . . .
>
>**SECTION 9.6 Time Limitations**
>Should either party fail to comply with the time limitations set forth in the above sections, the party will lose the grievance by default. . . .

There is no dispute the underlying substantive grievance issue, to wit; whether the employees working on the production of bearings should be represented by the Union, is subject to arbitration under the CBA.  Because the underlying issue is appropriately put to the arbitrator, the procedural question of timeliness is properly put to the arbitrator.  There is no language in the applicable CBA grievance/arbitration provisions that satisfies the *Saint Gobain* requirement that there be some express language in the CBA demonstrating the parties' intent to have a court, rather than an arbitrator, determine the procedural question of the timeliness of the grievance.  Therefore, the arbitrator had jurisdiction and authority to render a decision on the timeliness of the Union's grievance.

**<u>The arbitrator acted outside the scope of his authority</u>**

MMC contends the arbitrator exceeded the scope of his authority because the overwhelming evidence before the arbitrator demonstrated the grievance was untimely.  By concluding he had authority to render a decision on the merits by finding the grievance was timely, MMC argues the arbitrator has exceed the scope of his authority by determining the grievance is arbitrable.  In addition, Plaintiff contends the arbitrator further exceeded the scope of his authority by effectively writing out of the CBA the five-day limitation in which to file a grievance.  By his actions, his decision does not draw its essence from the CBA.  By ignoring the largely undisputed evidence presented him, MMC contends the arbitrator's decision should be vacated.

The Union argues, under *Michigan Family*, this Court's review is narrow and limited to the three areas of inquiry addressed by the Sixth Circuit.  First, "[d]id the arbitrator act 'outside his authority' by resolving a dispute not committed to arbitration?" Second, "did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award?"  Third,  "in resolving any legal or factual disputes in the case, (3) was the arbitrator 'arguably construing or applying the contract?".  The Sixth Circuit has "severely curtailed the scope of authority concept".  *Truck Drivers Local* at *5.  "An arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds that authority only when the collective bargaining agreement does not commit the dispute to arbitration." *Michigan Family Resources,* 475 F.3d at 756.

This Court has already determined the issue of timeliness was properly before the arbitrator therefore, he did not exceed the scope of his authority to hear the issue and render a

8

decision. Second, there is no allegation of fraud, conflict of interest or dishonesty, though MMC has alleged he failed to act impartially. MMC's central argument is the decision of the arbitrator was made against the weight of evidence presented him. This Court is not permitted, under its limited review, to dispute the fact-finding of an arbitrator. See *Misco* at 38. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596 (1960). Coupled with the limiting language of the Sixth Circuit in scope of authority analysis, this Court cannot find the arbitrator exceeded the scope of his authority.

However, the inquiry does not end there, for encompassed in Plaintiff's allegations is whether the arbitrator was arguably construing or applying the contract. The Sixth Circuit provides the following guidance for Courts when deciding this issue:

> The Court's repeated insistence that the federal courts must tolerate "serious arbitral errors suggests that judicial consideration of the merits of a dispute is the rare exception, not the rule. At the same time, we cannot ignore the specter that an arbitration decision could be so "ignor[ant]" of the contract's "plain language," *Misco,* 484 U.S. at 38, 108 S.Ct. 364, as to make implausible any contention that the arbitrator was construing the contract. An interpretation of a contract thus could be so untethered to" the terms of the agreement, to borrow a phrase from our Circuit Justice, *Garvey,* 532 U.S. at 512, 121 S.Ct. 1724 (Stevens, J., dissenting), that it would cast doubt on whether the arbitrator indeed was engaged in interpretation. Such an exception of course is reserved for the rare case. For in most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that. *United Steelworkers v. Warrior & Gulf Navigation Co.,,* 363 U.S. 574, 582-83, (1960), [full citation added] ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").
> This view of the "arguably construing" inquiry no doubt will

> permit only the most egregious awards to be vacated. But it is a view that respects the parties' decision to hire their own judge to resolve their disputes, a view that respects the finality clause in most arbitration agreements, ... and a view whose imperfections can be remedied by selecting better arbitrators.

*Michigan Family*, at 753-54.

Similar to the situation in *Michigan Family*, this Court finds the arbitrator's decision of June 15, 2006, " has all the hallmarks of interpretation."  First, the arbitrator framed the issue before him as "[i]s the subject grievance timely filed, or forfeited by default, under the provisions of Article 9 of the collective bargaining agreement." (Arbitration Decision & Award pg. 2).  Next, the arbitration decision contains the relevant provisions of the CBA, including italicized portions of the CBA the arbitrator deemed pertinent to the issue before him.  The arbitrator relied, at least in part, on the Article 14 of the CBA which, according to the arbitrator, required MMC to inform the Union of any new production work and required MMC to provide a new job code for the production work.  Because MMC never coded the new production work and because of the secretive work performed for the United States military, the arbitrator held, "only management knows when the former (research and development) ceases and the latter (production) commences."  (Arbitration decision pg. 25).  MMC argued the Union knew production was occuring for many years prior to bringing the grievance.  MMC provided substantial evidence supporting its position, including a previous grievance filed by the Union on the subject of this grievance filed years earlier and subsequently withdrawn.  The Union countered it could never prove the production until it filed its present grievance.  Until that time, MMC had characterized the ball bearing production as research and development.  The arbitrator agreed and found the grievance timely.  The arbitrator found the alleged violations to be a classic

10

case of recurring (continuous) violations..." (Arbitration decision pg. 36).

Throughout the arbitrator's thirty-seven page decision he constantly and consistently referred to and applied the relevant provisions of the parties' CBA in reaching his conclusion. Whether the conclusion he reached would have been this Court's is irrelevant. Under *Michigan Family*, "the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute." Even if the arbitrator's findings and interpretation are erroneous, under this Court's limited review, erroneous findings would not be enough to overturn the decision of an arbitrator whose authority to determine the dispute was conferred by agreement of the parties. Therefore, the Court finds the arbitrator was arguably construing and interpreting the CBA in question.

**The arbitrator acted with partiality towards the Union**

MMC contends the arbitrator acted with partiality because he considered documents submitted *ex parte*; he ignored certain evidence; his decision contains incorrect assertions of material facts; he knowingly addressed the merits of the dispute which was not before him; and he created arguments not advanced by the Union on the Union's behalf.

First, this Court notes there is no allegation the arbitrator had any undisclosed relationships, committed fraud or had a conflict of interest. The Sixth Circuit has determined that a Court may find partiality in an arbitrator's decision, "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Apperson v. Fleet Carrier Corp.,* 879 F.2d 1344, 1358 (6th Cir.1989). "This standard requires a showing greater than an 'appearance of bias,' but less than 'actual bias.'" *Anderson, Inc. v. Horton Farms, Inc.,* 166 F.3d 308, 329 (6th Cir. 1998), quoting *Apperson* at 1358. "The alleged partiality must be

11

direct, definite, and capable of demonstration, and the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator." *Anderson* at 329.

The Court finds Plaintiff's arguments do not demonstrate partiality by the arbitrator. The *ex parte* documents submitted to the arbitrator by the Union were at the request of the arbitrator to both parties and consisted of the CBA and grievance documents. There is no argument these materials were not in the possession of MMC or prejudiced MMC. Therefore, the Court finds the arbitrator's acceptance of these documents does not support a finding of partiality.

Second, the Court finds the alleged ignoring of evidence by the arbitrator does not support a finding of partiality. The arbitrator's decision demonstrates a yeoman's effort in scope and consideration. This Court notes, in referring to the Sixth Circuit's opinion in *Michigan Family,* the arbitrator is not obligated to issue a written decision justifying its award. *Id* at 756. That this arbitrator wrote a thirty-seven page decision meticulously outlining the evidence he considered pertinent does not permit this Court to infer that any evidence not written about was not considered or evidences partiality. As the Sixth Circuit in *Anderson* stated, "[a]n adverse award in and of itself is no evidence of bias absent some evidence of improper motivation." *Anderson* at 330.

Even if the arbitrator mischaracterized or misinterpreted the language of the CBA and made mistakes in his fact-finding, the Court cannot find partiality absent some evidence of improper motive. *Michigan Family* requires the upholding of an arbitration award even over an erroneous interpretation or fact-finding by the arbitrator.

Also, while the arbitrator may have engaged in a line of questioning that went to the

merits of the underlying dispute, he made no decision on the merits.  Therefore, the Court finds no evidence of partiality when the arbitrator's decision ultimately was limited to the issue before him.

MMC contends the arbitrator made an argument not raised by the Union when it held, "underlying the Union's position in this case is that the company has an affirmative duty to provide it direct notice when new production work is commenced that belongs to the bargaining unit."  MMC argues the Union never made this argument.

The Court finds the above statement is ambiguous as to whether it was asserted by the Union or whether it is merely a finding by the arbitrator based on his reading of the CBA.  Regardless, this Court does not find this holding, absent some evidence of improper motive, is sufficient basis for finding partiality.

Finally, for the same reasons stated above, by MMC's contention the arbitrator showed partiality by *sua sponte* arguing the Union could not have pursued its grievance earlier because of the potential *res judicata* effect if it lost, absent something more, does not evidence partiality.

Therefore, the Court finds MMC has failed to demonstrate the arbitrator was partial to the Union.

**Award of costs and fees to Union**

The Union asks this Court to award costs and fees because MMC's challenge to the arbitrator's decision was without justification.  Both sides agree attorney's fees and costs are not routinely awarded in labor disputes.  Nor do the parties contend there is a statutory basis for such an award.  MMC's Complaint predated the Sixth Circuit's *en banc* opinion in *Michigan Family* which greatly restricted scope of authority challenges to arbitration awards.  Also, even in light

13

of *Michigan Family*, MMC's challenges were not frivolous but represent well-reasoned and legitimate challenges for which the Court will not impose an award of fees or costs against Plaintiff. Therefore, this Court declines to award Union attorney's fees and costs as the Court does not find MMC's challenge was unjustified.

Therefore, for the foregoing reasons, the Court grants Union's Motion for Summary Judgment to Enforce the June 15, 2006 Arbitration Decision and Award and overrules Plaintiff's Motion to Vacate. The Court also declines to award the Union attorney's fees and costs.

IT IS SO ORDERED.

                                                                                s/Christopher A. Boyko
                                                                               CHRISTOPHER A. BOYKO
                                                                               United States District Judge

March 31, 2008